**In the Matter of the Complaint of POLING TRANSPORTATION CORPORATION, as Owner pro hac vice of the Motor Vessel, "Poling Bros. No. 7," and Motor Vessel Poling Bros. No. 7, Inc., as Owner of the Motor Vessel "Poling Bros. No. 7," Plaintiffs, for Exoneration from or Limitation of Liability.**

**No. 87 Civ. 8505 (RWS).**

United States District Court,
S.D. New York.

Oct. 13, 1991.

Connell Losquadro & Zerbo, New York City, for plaintiff Poling Transp. Corp.; William F. Losquadro and Donna Marie Zerbo, of counsel.

Bower & Gardner, New York City, for claimants Long Island R. Co. and Metropolitan Transp. Authority; Patrick J. Kenny, of counsel.

Jacob D. Fuchsberg Law Firm, New York City, for claimants Antonio Coca and Sylvia Coca; James M. Lane, of counsel.

Stanley P. Danzig, New York City, for claimant David Theophilous.

## OPINION

SWEET, District Judge.

Plaintiffs Poling Transportation Corp. and Motor Vessel Poling Bros. No. 7, Inc. (the "Poling Entities") brought this limitation action under the admiralty and maritime jurisdiction of this court pursuant to Rule 9(h) and Supplemental Rule F, Fed. R.Civ.P. The individual claimants Antonio Coca, Sylvia Coca and David Theophilous (the "Individual Claimants") made timely requests for a jury trial pursuant to Rule 38, Fed.R.Civ.P, which the Poling Entities and claimants Long Island Railroad Company ("LIRR") and the Metropolitan Transit Authority ("MTA") have opposed. For the following reasons, the Individual Claimants' request that a jury be empaneled is granted.

### The Parties

The Poling Entities are corporations organized and existing under the laws of the State of New York. At all times relevant to this action, the Poling Entities were the registered and *pro hac vice* owners of the Motor Vessel Poling Bros. No. 7 (the "Vessel"). The Vessel is a United States documented, diesel-driven steel tanker.

The MTA is a public benefit corporation organized and existing under the laws of the State of New York.

The LIRR is a public benefit corporation organized and existing under the laws of the State of New York. It is a subsidiary of the MTA with its own corporate status.

### Background

On or about December 27, 1986, the Vessel delivered and discharged her cargo of no-lead premium gasoline to the Ditmas Terminal at Newton Creek in Long Island City, New York, which is owned and operated by Ditmas Oil Associates, Inc. ("Ditmas"), a New York corporation. While the Vessel was discharging her cargo, the shore tank receiving the gasoline overflowed and a spill of approximately 12,000 gallons eventually seeped out into the Ditmas Terminal and the adjacent properties. Shortly thereafter, there was a fire and explosion. The source igniting this fire is currently in dispute before this court.

The Individual Claimants were injured and the property of various other claimants (the "Other Claimants")[1] was damaged as a result of the explosion and fire. The Individual Claimants commenced actions against the Poling Entities, the LIRR, the MTA, and the Other Claimants in New York State Supreme Court, Bronx and Queens Counties, for injuries, economic loss and loss of services allegedly sustained due to the fire. The Other Claimants brought state court actions for property damage against the Poling Entities, the LIRR, and the MTA.

On December 2, 1987, Poling brought this exoneration or limitation of liability action in this court pursuant to Supplemental Rule F, Fed.R.Civ.P. Notice of the complaint and of the time to file claims in the limitation action was filed on January 13, 1988. On December 4, 1987, this court entered a stay enjoining the commencement or prosecution of any actions or proceedings against the Poling Entities or their property for any loss or damage resulting from the fire and explosion pending the resolution of the limitation proceeding.

---

1. The "Other Claimants" include: Ditmas Oil Associates, Inc., which owns and operates the Ditmas Terminal, a gasoline storage facility at Newtown Creek in Long Island City allegedly damaged in the fire and explosion; Racal Construction Corp. ("Racal"); Gaseteria, Inc. ("Gaseteria"); Lusa Realty, Inc. ("Lusa"); Chambers Transport, Inc. ("Chambers"); and Oscar Porcelli ("Porcelli").

The Individual Claimants have filed claims in the limitation proceeding against the Poling Entities in the aggregate amount of $56,500,000 and cross-claims against the LIRR, the MTA, and the Other Claimants and have requested a jury trial. In addition, the LIRR, the MTA, and the Other Claimants have filed claims for damages and for contribution and/or indemnification against the Poling Entities. The Poling Entities have filed counterclaims or, in the alternative, claims for contribution and/or indemnification against the LIRR, the MTA, Individual Claimant David Theophilous and the Other Claimants.

*Discussion*

The Individual Claimants maintain that this court should try the issues raised by the Poling Entities' petition for limitation of liability without a jury, following which the court should lift the stay so that the remaining issues can be decided in state court, presumably with a jury. The Individual Claimants argue that this approach is proper because the state claims are not properly within the pendent jurisdiction of this court.

Alternatively, the Individual Claimants urge that if the court concludes that it does have pendent jurisdiction over the state claims, it must adjudicate this case in a manner that preserves their right to jury trial on the common law claims, that is, that it must empanel a jury in the limitation proceedings.

The Poling Entities counter that this matter must proceed as a bench trial because there is no right to a jury trial in admiralty absent a claim carrying a statutory right to jury trial, such as one under the Jones Act, or an independent basis of federal jurisdiction, such as diversity, both of which are lacking here. Unlike the Individual Claimants, the Poling Entities maintain that pendent jurisdiction over the state law claims in the limitation proceeding is wholly proper and that therefore they may be adjudicated before this court without a jury.

■ This court concludes that pendent jurisdiction over the common law claims does exist. The limitation issue is a substantial federal claim, *see Ford Motor Co. v. Wallenius Lines*, 476 F.Supp. 1362, 1368 (E.D.Va.1979) (admiralty constitutes federal basis for pendent jurisdiction), and the common law claims for personal injury, property damage, and indemnification and/or contribution arise from a "common nucleus of operative fact," namely, the fire and explosion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The question thus presented is whether the court may empanel a jury in this limitation proceeding based on the presence of pendent state law claims for which there is no independent basis of federal jurisdiction. This question naturally divides itself into two sub-questions: [2] (1) must the limitation and common law issues be tried to the court sitting without a jury or (2) may the limitation issues be tried to the court and the common law issues tried to a jury?

## I. *Jurisdiction over Limitation Proceeding*

This matter is before this court pursuant to 28 U.S.C. § 1333 ("§ 1333") and 46 U.S.C.App. § 183(a) ("§ 183(a)" or the "Limitation Act"). The Limitation Act provides that:

> The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

Claimants concede that limitation must be determined by the court.

**2.** It is unnecessary to consider a third possible alternative—trying both the limitation and common law issues to the jury—since the Individual

Upon application by the vessel owner, *see* Supplemental Rule F(3), Fed.R.Civ.P., the district court may conduct a proceeding to determine whether exoneration or limitation is appropriate, pursuant to its jurisdiction under § 1333. Section 1333 provides that:

> The district court shall have original jurisdiction, exclusive of the courts of the States of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Once the complaint seeking limitation or exoneration is filed, the district court "shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Supplemental Rule F(3), Fed.R.Civ.P. Thereafter, the district court notifies all potential claimants to file their claims against the shipowner in the admiralty court within a specified time period.

Sitting in admiralty without a jury, the district court then conducts a proceeding, known as a "concursus," in which it determines whether limitation or exoneration is appropriate. The court inquires as to whether there was negligence and, if so, whether it was without the privity or knowledge of the vessel owner. If the court finds no privity or knowledge, limitation is granted, and the court must determine how the limitation fund should be allocated. *In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988) (citing *Universal Towing Co. v. Barrale*, 595 F.2d 414, 417 (8th Cir.1979)). If limitation is denied, the district court may dissolve the injunction against other proceedings, thus permitting claimants to pursue their claims outside the limitation proceeding. *Red Star Towing & Transp. Co. v. The "Ming Giant"*, 552 F.Supp. 367, 371 (S.D.N.Y.1982) (hereinafter *"Ming Giant"*).

The Limitation Act is "'directed at misfortunes at sea where the losses incurred exceed the value of the vessel and the pending freight.'" *Dammers*, 836 F.2d at 754–55 (quoting *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 150–51, 77 S.Ct. 1269, 1271–72, 1 L.Ed.2d 1246 (1957)). The concursus, and concomitant stay of all other proceedings against the owner of a vessel, is the means by which the admiralty court can achieve the "primary purpose of the Act," namely, "'to provide a marshalling of assets [and] the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full.'" *Id.* at 755 (quoting *In re Moran Transp. Corp.*, 185 F.2d 386, 389 (2d Cir.1950), *cert. denied* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951)).

## II. *Conflict between Admiralty and "Saving to Suitors" Clause of § 1333*

■ Because there is no right to a jury trial in actions instituted in admiralty, *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963); *Waring v. Clarke*, 46 U.S. (5 How.) 441, 458–60, 12 L.Ed. 226 (1847); *In re Complaint of Berkley Curtis Bay Co.*, 569 F.Supp. 1491, 1493 (S.D.N.Y.), *aff'd sub nom.*, *Berkley Curtis Bay Co. v. American Dredging Co.*, 742 F.2d 1431 (2d Cir. 1983), *cert. denied*, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984); *see also* Rule 38(e), Fed.R.Civ.P. ("These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim...."), and because the claimants are enjoined from proceeding in other forums once a limitation proceeding is commenced, this procedure necessarily denies claimants their right to pursue common law claims before a jury. *See Dammers*, 836 F.2d at 755. When considered alongside the "saving to suitors" clause of § 1333, which provides that the exercise of admiralty jurisdiction will not deny suitors the right to common law remedies "to which they are otherwise entitled," this result gives rise to the "recurring and inherent conflict in admiralty law" between the non-jury admiralty tradition and a claimant's right to jury trial. *Id.* at 754; *see Berkley Curtis*, 569 F.Supp. at 1494.

### A. Exceptional Circumstances Obviating Need for Concursus

There are two situations in which a concursus will not be necessary, and in which the exclusive jurisdiction of the admiralty court hence must yield and allow a claimant to pursue his claim outside the limitation proceeding. First, if the value of the vessel and her cargo (i.e., the limitation fund) exceeds the value of all claims against it, no concursus is necessary and the claimants may proceed in other forums. *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); *Dammers*, 836 F.2d at 755; *see also In re Complaint of Falkiner*, 716 F.Supp. 895, 901 (E.D.Va.1988). Second, where there is a "lone claimant" seeking to recover in excess of the limitation fund, the admiralty court must lift the stay, providing that the claimant concedes the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability. *Dammers*, 836 F.2d at 755.

To qualify for the latter exception, the claimant must file certain protective stipulations to safeguard the shipowner against exposure to liability in excess of the vessel and its cargo if limitation ultimately is found appropriate. The claimant must stipulate that the value of the limitation fund is the value of the vessel and its cargo; that the state court judgment will not be given *res judicata* effect; and that the district court has exclusive jurisdiction to determine all issues concerning the right of the shipowner to limit liability. *Id.* at 757–58; *see* G. Gilmore & C. Black, Jr., *The Law of Admiralty* § 10–19, at 871 (2d ed. 1975); T. Schoenbaum, *Admiralty and Maritime Law* § 14–5, at 489 (1987).

The Second Circuit has held that the "lone claimant" exception also encompasses a technically "multiple claimant" situation, such as one in which there is a "reasonable prospect of claims for indemnification," where adequate stipulations are filed to ensure that the shipowner in no event will face liability in excess of the limitation fund if limitation is granted. *Dammers*, 836 F.2d at 759. In that case, the court "must take all steps necessary to assure that claimants are allowed to pursue their common law remedies in accordance with the 'saving to suitors' clause." *Id.* "The shipowner, so long as his claim of limited liability is not jeopardized, is subject to all common law remedies available against other parties in damage actions." *Lake Tankers*, 354 U.S. at 152–53, 77 S.Ct. at 1272–73.

The instant case falls under neither of these exceptions. Here, the potential claims far exceed the purported limitation fund of approximately $384,000. Moreover, the various claimants have not provided adequate stipulations to bring the case within the "lone claimant" exception as interpreted in *Dammers*. Nevertheless, the policy driving the two exceptions is instructive in analyzing the issue posed today. That policy, of course, is to protect the vessel owner against the enforcement of potential claims in excess of the limitation fund, if limitation is granted, by assuring that all claims against the fund are frozen until the limitation question is resolved.

### B. Jury Trial Within Concursus: Non–Admiralty Claims with Independent Basis of Federal Jurisdiction

Because concursus is necessary here, the question becomes, is there a way to preserve a claimant's right to its common law remedies *within* the concursus?

Despite some division on the question of whether the limitation issues should go to the jury or remain for the court, *compare, e.g., Ming Giant* (all questions potentially for jury) *with Newton v. Shipman*, 718 F.2d 959, 964 n. 5 (9th Cir.1983) (Jones Act claim to be tried by jury at same time as limitation issue tried by court) *and Weeks v. Reliance Inc. Co. of New York*, 81 Civ. 3479 (CSH) (1985 WL 462) (S.D.N.Y. Mar. 28, 1985) (questioning propriety of *Ming Giant* decision to commit limitation aspects of case to jury), courts within and without this circuit have held that where a claim with *independent jurisdictional* basis normally carrying a jury right is joined with admiralty claims arising out of the same transaction or occurrence, at least the non-admiralty claim may be tried to the jury.

*See, e.g., Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 20–21, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963) (Jones Act); *Ming Giant,* 552 F.Supp. at 371 (citations omitted) (emphasis added) (Jones Act and Death on the High Seas Act); *Zrncevich v. Blue Hawaii Enters., Inc.,* 738 F.Supp. 350, 353 (D.Hawaii 1990) (Jones Act); *Berkley Curtis,* 569 F.Supp. at 1493–94 (Jones Act and diversity).

This result appears to be motivated by two considerations. The first of these is the importance of accommodating both the admiralty tradition and the right to jury trial of common law claims where possible. *See, e.g., Dammers,* 836 F.2d at 760 ("admiralty courts must strive whenever possible to promote the policies underlying both provisions"); *cf. Berkley Curtis,* 569 F.Supp. at 1494 ("Where the nonjury admiralty tradition and a plaintiff's jury right conflict, the jury right must prevail."). The second consideration is judicial economy. Noting that no constitutional provision, statute, or federal rule *forbids* jury trials in admiralty, one court has reasoned that where the claimant is entitled to a jury trial on its non-admiralty claim, "[o]nly one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments" in the interest of putting an end to "such an unfortunate, outdated, and wasteful manner of trying these cases." *Fitzgerald,* 374 U.S. at 20–21, 83 S.Ct. at 1650. This is especially true where the liability and damage claims involve an apportionment of liability among various parties so that "they could not [be] conveniently severed for trial to separate factfinders or tried simultaneously to two factfinders with likelihood of different verdicts." *Berkley Curtis,* 569 F.Supp. at 1494–95; *see also Ming Giant,* 552 F.Supp. at 374.

C. Jury Trial Within Concursus: Pendent Claims with No Independent Basis of Federal Jurisdiction

As Poling makes abundantly clear, those cases are factually distinguishable because the non-admiralty claims here have no "in-dependent jurisdictional basis normally carrying a jury right."

A similar situation arose in *In re Complaint of Sheen,* 709 F.Supp. 1123 (S.D.Fla. 1989). There, the plaintiff boatowner, Sheen, filed a complaint seeking exoneration from or limitation of liability pursuant to § 183. Simpkin, who had suffered personal injuries on the boat, filed a claim praying for the denial of limitation and damages. Because Simpkin's claim exceeded the purported limitation fund and no stipulations were filed to cover potential contribution claims, neither of the two exceptions obtained. Furthermore, although not discussed explicitly by the court, it appears that the non-admiralty claims carried no independent basis of federal jurisdiction. *See id.* at 1126 & n. 2.

The court decided to determine the limitation issues first while keeping the stay in effect. Following the resolution of the limitation proceeding, the court would lift the stay. The court reasoned that:

> This mechanism satisfies the purposes behind both legislative directives [i.e., of the Limitation Act and the "saving to suitors" clause]. In essence, the federal court necessarily determines both the existence of negligence and limitation, a decision that satisfies the Limitation Act's requirements. Because the claimant is then free to have a state court, even a state jury, determine relative degrees of fault and damages, the congressional purposes behind the "saving to suitors" clause are somewhat fulfilled. Little, if any, judicial inefficiency results, for the determination of the existence of negligence would not have to be made twice because this court's finding must be entitled to *res judicata* effect. The subsequent court need only find if additional parties not joined in the federal action are at fault ..., the relative degrees of fault amongst the tort feasors, and damages.

*Id.* at 1126 n. 2.

The Ninth Circuit adopted a different approach in *Churchill v. The F/V Fjord,* 892 F.2d 763 (9th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 3273, 111

L.Ed.2d 783 (1990). Plaintiffs there brought claims in district court for wrongful death and personal injury arising from the navigation of three skiffs, two of which collided. *Id.* at 766. The district court had subject matter jurisdiction under § 1333 and exercised pendent jurisdiction over plaintiffs' state law claim. The court conducted a bench trial, after which it entered judgment in the liability phase of the trial in favor of defendants.

Asserting that the pendent state law claim entitled them to a jury trial, the plaintiffs appealed, in part because the district court had stricken their demand for a jury trial. The Ninth Circuit acknowledged the district court's rejection of that argument, which was grounded in the rule that where a state law claim is in federal court solely by virtue of admiralty jurisdiction, plaintiffs are not entitled to a jury trial. *Id.* at 769 (citing *Tallentire v. Offshore Logistics, Inc.,* 754 F.2d 1274, 1287 (5th Cir.1985), *rev'd on other grounds,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Ashland Oil v. National Bank of Ashland, Ky.,* 557 F.Supp. 862, 872 (E.D.Ky.1983)).

The appellants argued, nevertheless, that the general rule of no jury trials in admiralty cases should be disregarded when a plaintiff is forced into federal court by defendant's limitation action, particularly in light of the injunction against related state court proceedings during the pendency of the limitation action. *Id.* The Ninth Circuit rejected this argument, but found that:

> Appellants' arguments might have force if, *having chosen a forum* or pled claims *on which a jury trial was available,* they were forced into a court of admiralty by appellees. This was not such a case. The appellants here selected the federal forum in the first instance, and repeatedly designated their complaint as arising in admiralty.

*Id.* (emphasis added).

### III. *Application of Principles to the Present Case*

 There is no dispute that the Individual Claimants will be entitled to act on their claims in state court, presumably before a jury, if this court denies limitation or exoneration. Technically, then, the serial bifurcation alternative adopted by the court in *Sheen* presents a viable approach. Indeed, this appears to be the approach preferred by the Individual Claimants. The Poling Entities, on the other hand, maintain that both the limitation and common law claims should be tried by the court.

Neither of these approaches satisfactorily accounts for all of the interests implicated here, which are: (1) the admiralty tradition disfavoring the use of a jury in limitation proceedings; (2) the preservation of the Individual Claimants' right to a jury trial of their common law claims, as embodied in the "saving to suitors" clause of § 1333; and (3) judicial economy.

The Poling Entities attempt to remove the "saving to suitors" consideration from the calculus by asserting that, since no independent basis of federal jurisdiction exists for the pendent state law claims, jury trial is not a remedy to which the Individual Claimants are "otherwise entitled." Indeed, the very question of whether there is a *right* to jury trial on a pendent claim was elided by the Supreme Court in *Fitzgerald. See* 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 38.35[4], at 38–320 (2d ed. 1991).

One court has answered in the negative. In *Weeks v. Reliance Insurance Co. of New York,* 81 Civ. 3479 (CSH) (1985 WL 462) (S.D.N.Y. Mar. 28, 1985), the plaintiffs/yachtowners sued their insurance company in federal court on their marine insurance policy, a claim within the court's admiralty jurisdiction. They also stated a pendent claim against their insurance broker for negligent failure to procure insurance. The latter claim was outside the admiralty jurisdiction, and thus was retained only as a pendent claim. The insurance broker demanded a jury trial, but the court held that although it was "quite prepared to retain pendent jurisdiction.... this admiralty action on a policy of marine insurance, coupled with a pendent common law claim of no independent federal juris-

dictional basis, carries with it no right to trial by jury." *Id.* at 9.

Regardless of the undisputed truth of the statement that there is no *right* to jury trial in admiralty, and the ambiguity as to whether such a right exists on a pendent common law claim, "neither [the Seventh] Amendment nor any other provision of the Constitution forbids them [jury trials]. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." *Fitzgerald,* 374 U.S. at 20, 83 S.Ct. at 1650. There is no reason to believe that the purposes of the Limitation Act include enabling a vessel owner to take a tort victim's case away from a jury. As one court has noted, "[t]he Limitation Act was fashioned by Congress as a shield rather than a sword." *In re Complaint of Cameron Boat Rental, Inc.,* 683 F.Supp. 577, 582 n. 6 (W.D.La. 1988). "As long as the admiralty court can effectively ensure that a shipowner will not face liability in excess of the limitation fund," *Dammers,* 836 F.2d at 759, no compelling reason can be presented for denying the Individual Claimants a jury on their common law claims and forcing them, as in *Sheen,* to cross the street to obtain that process.

The Individual Claimants here were forced into federal court, having already brought their claims in state court, where they are entitled to a jury. This situation is analogous to, though concededly different from, one in which a defendant in an equity action files a legal counterclaim for which there is an independent basis of federal jurisdiction, such as diversity, demanding a jury trial of the legal issues. In that situation, the Supreme Court has held that a jury right may not be preempted through procedural tactics. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 479–80, 82 S.Ct. 894, 900–01, 8 L.Ed.2d 44 (1962).

Indeed, the Ninth Circuit in *Churchill* seemed to acknowledge the applicability of this analogy in a case such as this one in allowing that the request of appellants there for a jury trial might have had force if, "having chosen a forum or pled claims on which a jury trial was available, they were forced into a court of admiralty by appellees." *Churchill,* 892 F.2d at 769.

Moreover, embarking on this proceeding without a jury in the interest of maintaining aesthetic purity, makes no sense. Due to the multi-party nature of this action and complicated questions involving, among other things, causation, a full-blown trial will be necessary simply to resolve the limitation issues of negligence and privity or knowledge—a trial that would necessarily be duplicated in state court if limitation is denied thus freeing the Individual Claimants to proceed there. This consideration distinguishes this case from *Weeks,* in which the "pendent" claim against the insurance broker for negligent failure to procure insurance would certainly not have required the very same proof as the claim against the insurance agency.

Since virtually the entire case must be presented just on the limitation issues, even if the court denies limitation, it would be consistent with the purposes of pendent jurisdiction to retain the state issues. *Enercomp, Inc. v. McCorhill Pub., Inc.,* 873 F.2d 536, 545–46 (2d Cir.1989) (if "substantial resources" have been committed, appropriate to retain pendent jurisdiction over pendent claims even if federal claim is dismissed). The proper approach here is to empanel a jury at the outset and allow trial to proceed on issues pertaining both to limitation and the common law claims.

At the close of the evidence, the court will determine the admiralty issues, including any preclusive effect to be given to that resolution. The remaining issues on the state law claims, if any, will be submitted to the jury.

*Conclusion*

For the foregoing reasons, the Individual Claimants' request for the empaneling of a jury is granted. The court shall determine whether exoneration or limitation should be

granted. The jury shall determine the remaining issues.

It is so ordered.